MAY vs. MAY'S ADM'R.

[BILL IN EQUITY TO HAVE ABSOLUTE DEED DECLARED MORTGAGE.]

1. *Fraudulent deed not reformed.*—A court of equity will not, at the instance of the grantor, declare a deed, absolute on its face, to be a mortgage or trust, when the evidence shows that the transaction was intended by the parties to delay, hinder or defraud the grantor's creditors.

APPEAL from the Chancery Court of Greene.

Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed by Alexander May, on the 24th January, 1855, against the administrator of his deceased brother, John May; and sought to have a deed, absolute on its face, declared a mortgage, and for a redemption and account. The deed sought to be reformed was executed by the complainant on the 15th March, 1843; recited a consideration of $6,000, in hand paid; and conveyed to the grantee a tract of land, twenty-two slaves, and some other personal property, the aggregate value of which at that time was proved to be between $15,000 and $20,000. The administrator answered the bill; denying that the deed was intended to operate as a mortgage; and insisting that the transaction, if accompanied by any parol agreement whatever, was intended to delay, hinder and defraud the creditors of the grantor. On final hearing, on pleadings and proof, the chancellor held, that while the evidence showed that the deed was accompanied by a parol agreement, which might be sufficient to convert it into a mortgage, it also established the further fact, that the transaction was intended by the parties to defraud the creditors of the grantor. He therefore dismissed the bill, and his decree is now assigned as error.

E. W. PECK, with whom was S. F. HALE, for the appellant, contended,—

1. That the evidence, consisting principally of the parties' admissions and declarations, made twelve years ago,

and repeated by witnesses who could not recollect the language used, and who only professed to give the impressions remaining on their minds, was susceptible of an interpretation consistent with honest intentions, and was, therefore, insufficient to establish the alleged fraud.

2. That if there was any fraud in the transaction, the grantee was the active perpetrator of it, and could not be heard to set it up in avoidance of the trust which he had taken upon himself; that the evidence showed that, at the time the application for a loan of money was made, the grantor desired to borrow enough to pay all his outstanding debts, and proposed to secure its repayment by a mortgage or deed of trust; and that the conveyance was made absolute in form at the suggestion of the grantee, who had the power to make his own terms, and who feared that there might be other outstanding debts. To this point they cited Eddins v. Wilson, 1 Ala. 237; Roden v. Murphy, 10 Ala. 804; Wiley, Banks & Co. v. Knight, 27 Ala. 336; Henderson v. Segars, 28 Ala. 352.

Wm. G. Jones, and Wm. P. Webb, contra, cited the following cases: Brantley v. West, 27 Ala. 542; Bryant v. Young, 21 Ala. 264; Parish v. Gates, 29 Ala. 254; Owen v. Sharp and Wife, 12 Leigh, 427; Thomas v. McCormick, 9 Dana, 108; Ford's Executors v. Lewis, 10 B. Monroe, 127.

RICE, C. J.—On the 15th March, 1843, the complainant executed to John May a conveyance, absolute on its face, of a plantation, slaves and other property. The bill was filed on the 24th January, 1855, for the purpose of having the conveyance declared to be a mortgage, and the complainant let in to redeem.

An examination of the pleadings and proof has brought us to the conclusion, that the arrangement between these parties, by which John May got the title to the property of the complainant, was designed by them to delay, hinder, or defraud the creditors of the complainant. With that design, they made the sale an absolute one on its face, and a mortgage by private agreement. That being so, "no

obligation to reconvey, growing out of the transaction, or *forming part of it*," can be enforced in a court of equity. Whilst that court will not allow the grantee in an absolute conveyance to hold the property discharged of the conditions or trusts, which by his consent were attached to the conveyance, and which he agreed to fulfill *when the transaction is fair and lawful on the part of the grantor*, (Sewell v. Price's Adm'rs, 32 Ala. 97;) yet it cannot aid a grantor in carrying out and effectuating an illegal arrangement, by which he has parted with the title to his property by an absolute conveyance, for the purpose of delaying, hindering or defrauding his creditors, upon the private verbal agreement that the grantee would reconvey the property, or allow it to be redeemed. When parties enter into such arrangements, a court of equity does not interfere between them, but leaves them where they have thus placed themselves. These views are well sustained by authority, and are decisive of this case.—Brantley v. West, 27 Ala. 542; Ford's Ex'rs v. Lewis, 10 B. Mon. 127; Wright v. Wright, 2 Litt. 8; Grider v. Graham, 4 Bibb, 70; Thomas v. McCormick, 9 Dana, 108; Norris v. Norris, *ib.* 317; Trimble v. Ratcliff, 9 B. Monroe, 513; Owen v. Sharp, 12 Leigh, 427; Rhem v. Tull, 13 Ired. 62; Deally's Heirs v. Murphy, 3 A. K. Marsh, 475; Cornell v. Pierson, 4 Halsted's Ch. R. 478; Story's Conflict of Laws, § 247; Booth v. Hodgson, 6 Term R. 405; Fivaz v. Nicholls, 52 Eng. Com. Law R. 502; Roby v. West, 4 New Hamp. R. 285.

It will be readily perceived, that the result of this case would not be changed by the opinion we might entertain on the other questions presented by the record. We therefore decline to express our opinion on those questions; and put the affirmance of the chancellor's decree upon the views hereinabove expressed.

Decree affirmed, at the costs of appellant.